# Court of Appeals.

*June,* 1885.

## PEOPLE *v.* LYON.

(Reversing 1 *N. Y. Crim. Rep.* 400 ; 2 *Id.* 484.)

WHAT IS A FELONY.—"PECULATION ACT," L. 1875, CH. 19.

In this state the common law definition of a felony is inapplicable, and the grade of the offense is determined by the character of the punishment which may be inflicted therefor.

In this state, the term *felony* means an offense punishable by death or imprisonment in state prison.

The maximum punishment which may be imposed is the test by which the grade of the crime is determined—the punishment which *may be,* not what *must be* inflicted.

Offenses under the "Peculation Act," L. 1875, ch. 19, are felonies.

Where a felony is committed through the agency of a guilty instrument or participant, the instigator is regarded as an accessory before the fact, and must be indicted and punished as such.

APPEAL by the defendant, James S. Lyon, from a judgment of the General Term of the Supreme Court, in the fifth department, of October 31, 1884, affirming a judgment of the Court of Oyer and Terminer of Erie county, of April 6, 1883, Hon. GEORGE BARKER, presiding, convicting defendant of receiving and converting certain moneys of the city of Buffalo.

The facts and the arguments of counsel are fully given in the report of this case at General Term, 2 *N. Y. Crim. Rep.* 484.

*Brundage & Chipman* (*Samuel Hand* and *F. C. Brundage,* of counsel), for defendant, appellant.

*Edward W. Hatch,* district attorney, for the people, respondent.

RAPALLO, J.—The defendant was convicted in the court of
Oyer and Terminer of Erie county, under chapter 19 of the
Laws of 1875, upon an indictment charging him with having,
on September 14, 1875, fraudulently and feloniously ob-
tained and received from Joseph Bork, then treasurer of the
city of Buffalo, the sum of twenty-two hundred dollars of the
funds of that city, held by said Bork as such treasurer. The
second count of the indictment charged the defendant with
having feloniously and wrongfully obtained said money and
converted it to his own use. In both counts the defendant is
charged as a principal, and there is no count charging him as
an accessory.

The money was not received by the defendant personally.
It was deposited by Bork, or by his direction, with the banking
house of Lyon & Co., of the city of Buffalo, of which firm
Bork and the defendant were members, and was used by that
firm in its business. The defendant had no knowledge of the
particular transaction upon which he was indicted, he being at
the time in the territory of Utah, where he had been for about
a month before, and he did not return to Buffalo until about
ten days after the transaction. The prosecution, to make out
their case against him, relied upon evidence that on prior oc-
casions Bork had, with the knowledge of the defendant, used
the funds of the city in his hands as treasurer, in the business
of the firm ; and it was claimed that this evidence established
that an understanding existed between Bork and the defendant
that the city funds should be so used whenever required. The
conviction rests upon this theory.

On the part of the defendant the point is taken that the
offense of which the defendant was convicted is a felony ;
that there is no evidence upon which his conviction, as a prin-
cipal, could be sustained, he not having been either actually or
constructively present at the commission of the offense, that
the most that could be claimed is that the evidence tended to
prove that he was an accessory before the fact, and that, as such,
he could not be convicted under an indictment charging him as
a principal.

On this ground, among others, the defendant moved in the
court of Oyer and Terminer for a new trial, and, that being

denied, he appealed to the General Term of the Supreme court. Both of those tribunals conceded, that if the offense was a felony the conviction could not stand, and we concur in that view.

Where a crime of the grade of felony is committed through the agency of a *guilty* instrument or participant, the instigator is regarded as an accessory before the fact, and must be indicted and tried as such. People *v.* Erwin, 4 *Den.* 129 ; Irvine *v.* Wood, 51 *N. Y.* 224 ; Wixson *v.* People, 5 *Park Cr.* 121 ; *Russell on Crimes,* 27 ; *Wharton Cr. Law,* § 114 ; McCarney *v.* People, 83 *N. Y.* 409, 412, 413.

In cases of misdemeanor, however, there are no accessories. All who aid or participate in the crime are principals, and the conviction was sustained in the court below on the ground that the offense created by the act of 1875, ch. 19, was a misdemeanor only.

The act itself does not define in terms, the grade of the offense, but it does prescribe the punishment, which is imprisonment in a state prison for a term not less than three years or more than ten years, or a fine not exceeding five times the loss resulting from the fraudulent act, or by both such fine and imprisonment.

Statutes creating new offenses do sometimes declare that they shall be felonies, but the instances, although numerous in England, are here rare. As a general rule, the grade of the offense is determined by the nature of the punishment prescribed. The term " felony," in the general acceptance of the English law, comprised every species of crime which at common law occasioned a total forfeiture of lands or goods, or both, and to which might be superadded capital or other punishment, according to the degree of guilt. 4 *Black. Com.* 94, 95.

In England, the rule with regard to felonies created by statute, seems to be that not only those crimes which are declared in express words to be felonies, but also those which are decreed to undergo judgment of life and member by any statute, became felonies thereby, whether the word felony be omitted or mentioned. 2 *Russell on Crimes,* 44 (78, 4th ed.) ; *Hawk. Pl. Cr.* ch. 40, § 1.

The word misdemeanor is applied to all crimes less than felonies, comprehending all indictable offenses less than felonies. Among these are included in England, perjury, battery, libel, conspiracies, public nuisances, &c. 1 *Russell on Crimes*, 45 (79, 4th ed.).

In this state, forfeitures of property on conviction of crime have been abolished, and the common law definition of felony is inapplicable; but the principle of determining the grade of the offense by the character of the punishment is recognized in the clearest manner. Many crimes which, at common law, were only misdemeanors, are here felonies, and no instance can be found in which an offense, which is declared to be a misdemeanor, can be visited with the punishment prescribed for a felony.

Part IV. of the Revised Statutes, entitled " An act concerning crimes and punishments, proceedings in criminal cases, and prison discipline," covered, at the time of its enactment, the whole subject referred to in its title. Chapter 1, entitled " Of crimes and their punishments," is divided into seven titles, in which crimes are classified as follows : The first title is entitled " Of crimes punishable by death." The second, third, fourth and fifth titles relate to offenses " punishable by imprisonment in a state prison." The sixth title is, " Of offenses punishable by imprisonment in a county jail and by fines," and under this title are enumerated all offenses of the grade of misdemeanors. The maximum term of imprisonment for any of the misdemeanors enumerated in this title, with but a single exception in section 36, is one year's imprisonment in a county jail, while in many cases a much milder punishment is prescribed ; and by section 40, 2 *Rev. Stat.* 697, it is provided that " Every person convicted of any misdemeanor, the punishment of which is not prescribed in this or some other statute, shall be punished by imprisonment in a county jail not exceeding one year, or by fine not exceeding $250, or by both such fine and imprisonment."

Every one of the offenses enumerated in title 6, of ch. 1, part IV., with the solitary exception of petit larceny, is therein declared in terms to be a misdemeanor, but there is not a single offense enumerated in the second, third, fourth or fifth titles,

relating to offenses punishable by imprisonment in a state prison, which is in terms declared to be a felony, although among these offenses there are but few which were felonies at common law; the greater part of them, such as forgery, perjury, false pretenses and many others, having been only misdemeanors at the common law. Forgery was made a felony by statute in the reign of George II., first by a temporary and afterwards by a permanent enactment; but, unless there has been some very recent change, perjury and false pretenses are still misdemeanors, while petit larceny, though a felony at common law, is only a misdemeanor in this state, notwithstanding that the degree of the crime is not expressly declared in the statute. It is obvious that the degree of the offense according to the common law does not afford any guide for the determination of that question in this state.

The 7th title of chapter 1, part IV. of the Revised Statutes, however, furnishes the rule by which the degree of the offense can be ascertained. This title containes " general provisions concerning crimes and their punishment." Section 30 of this title (2 *R. S.* 702) provides that " the term ' felony ' when used in this act, or in any other statute, shall be construed to mean an offense for which the offender on conviction shall be liable by law to be punished by death, or by imprisonment in a state prison."

Although, as has been already remarked, the term " felony " is not used in any of the provisions of the Revised Statutes which declare the offenses punishable by imprisonment in a state prison, yet it is used in many other provisions relating to persons convicted of such offenses. For instance, sections 13 and 14 of art. 3 of title 4, chap. 1, part IV. (2 *R. S.* 683) provide that any person conveying into any place of confinement any disguise or other thing, with intent to facilitate the escape of any prisoner, detained for any felony whatever, or on a charge for any felony, or by any means aiding such a prisoner to escape, shall be punished by imprisonment in a state prison not exceeding ten years. Section 15 of the same title provides that similar assistance to a prisoner confined for any criminal offense *other than a felony*, shall be punished by imprisonment in a county jail not exceeding one year or by fine, or both.

Section 6 of title 7 (2 *R. S.* 698) provides that every person who shall be an accessory to any *felony* before the fact, shall, upon conviction, be punished as a principal in the first degree. By section 19 (2 *R. S.* 701), a sentence of imprisonment in a state prison for any term less than life, suspends all the civil rights of the person so sentenced and forfeits all public offices and private trusts or powers during the term of such imprisonment.

By section 23, before its repeal, no person sentenced upon a conviction for *felony* was competent to testify in any cause unless pardoned; but no sentence on a conviction for any offense other than a felony, rendered the convict incompetent. In all these cases there is no escape from the statutory definition of the term "felony."

The same rule for determining what is a felony is preserved by the Penal Code, which went into effect December 1, 1882. It declares (section 4) that a crime is either a felony or a misdemeanor; section 5, that a felony is a crime which is or may be punishable by either death or imprisonment in a state prison; section 6, that every other crime is a misdemeanor. If this Code established any new rule, or increased the degree of guilt, it could, not, of course, affect the defendant, as it would be an *ex post facto* law—the offense with which he was charged having been committed before its passage, and we do not refer to it for any such purpose, but simply as throwing light upon the meaning of the previously existing statutes of which the provisions last cited are a mere condensation.

The claim now made on the part of the prosecution,—that, notwithstanding the clear and harmonious provisions of the Revised Statutes which are aptly condensed in sections 4, 5 and 6 of the Penal Code, the offense for which the defendant was tried and convicted, an offense for which he was liable to punishment by imprisonment in a state prison for not less than three or more than ten years, and for which he was, in fact, sentenced to imprisonment in a state prison at hard labor for a term of four years, was a simple misdemeanor,—strikes us as so monstrous that we should not have deemed it justifiable to go into such an extended discussion of the subject, were it not that the conclusions at which we have arrived come in conflict

with a decision of this court rendered in the year 1861, in the case of Fassett *v.* Smith (23 *N. Y.* 252), in which it was held, in the prevailing opinion of JAMES, J., that the offense of obtaining goods, &c., by false pretenses, which at common law was a mere misdemeanor, was not changed by the Revised Statutes into a felony. That decision is the main reliance of the prosecution to support the judgment here appealed from. Fassett *v.* Smith was a civil action to avoid a satisfaction-piece of a mortgage and restore the lien of the mortgage, on the ground that the satisfaction-piece had been obtained by fraud. The defendants claimed to be *bona fide* subsequent purchasers or incumbrancers of the mortgaged premises, for value, without notice of the fraud. It was conceded in the prevailing opinion that if the fraud amounted to a felony they would not be protected.

Section 53 of art. 4, title 3, chap. 1, part IV. provided that, " every person who with intent to cheat or defraud another shall designedly, by color of any false token or writing or by any other false pretense, obtain the signature of any person to any written instrument, or obtain from any person, any money, personal property or valuable thing, upon conviction thereof shall be punished by imprisonment in a state prison not exceeding three years or in a county jail not exceeding one year, or by a fine not exceeding three times the value of the money, property or thing so obtained, or by both such fine and imprisonment." Section 54 provides that if the false token shall be a negotiable instrument purporting to have been issued by a bank not in existence, the punishment shall be imprisonment in a state prison not exceeding seven years. The article containing these provisions comes between article 2, which treats of forgery and counterfeiting, and article 4, which treats of robbery and embezzlement. The head-note to the case of Fassett *v.* Smith states the result of the decision to be, that the definition of the term " felony " in the Revised Statutes has not so changed the common law as to prevent a purchaser in good faith and for value, obtaining title to goods which the original vendee procured by false pretenses. If this is the extent of the decision, and its only effect is to protect a *bona fide* purchaser of goods obtained by a felony of the description referred to, the decision

has no particular bearing on the present case and may be of little practical importance, inasmuch as the Penal Code (§ 528) now makes obtaining goods by false pretenses, larceny. But the opinion in Fassett v. Smith goes farther and holds that section 30 does not assume to define the term "felony" except when used in a statute, and that, that term not being used in the statute relating to false pretenses, the common law character of the crime of obtaining goods, etc., by false pretenses, was not changed.

This interpretation of the statute is at variance with all previous decisions on the subject, in criminal and other prosecutions, and if applied to criminal cases would destroy the harmony and intelligibility of the system established by the Revised Statutes, as has already been shown. Even giving to the definition in section 30, the restricted meaning attributed to it by the learned judge, there could be no possible doubt of its application to the term "felony" in the statutes, before referred to, relating to the offenses of aiding a prisoner to escape, of subjecting an accessory before the fact to the same punishment as a principal in the first degree, suspending the civil rights of one sentenced to state prison, of rendering one convicted of the offense incompetent as a witness, etc. Thus, for some purposes the offense would have to be treated as a felony, while for others it would not. The consequences of a conviction would be those visited upon a conviction for a felony, while the indictment and trial would be governed by the rules applicable to misdemeanors, and it might be competent, under the provisions of section 26, article 6 of the constitution, to make the offender triable in a court of Special Sessions without a common law jury. See article 6, section 26, which is as follows : "Courts of Special Sessions shall have such jurisdiction of offenses of the grade of misdemeanor as may be provided by law." People *ex rel.* Comaford v. Dutcher, 83 *N. Y.* 240; People *ex rel.* Loughlin v. Finn, 87 *N. Y.* 533.

Prior to the case of Fassett v. Smith, the decisions were, both in civil and criminal cases, uniformly in accord with the view which we have taken as to the effect of the statutory definition of the term "felony."

In Mowrey v. Walsh (8 *Cow.* 238), which was decided in

1828, before the Revised Statutes were enacted, it had been held that one who had obtained goods by fraud, not amounting to a felony, could convey a good title to a *bona fide* purchaser for value, though it was conceded that if the goods were obtained by a felony, no title would pass; but the effort of the original vendor was to establish that the fraud by which the goods were obtained from him was such that the person obtaining them was guilty of larceny. The fraud consisted of a forged recommendation and guaranty, and amounted only to a false pretense. But the court, SAVAGE, Ch. J., delivering the opinion, held that as they were obtained only by a fraud which, at that time, did not constitute felony, the *bona fide* purchaser from the fraudulent vendor acquired a good title. But in the subsequent case of Andrew *v.* Dieterich (14 *Wend.* 31), decided in 1835, the same eminent judge delivered the opinion, holding that by the Revised Statutes obtaining goods by false pretenses, was made a felony, and the law was therefore changed from what it was when Mowrey *v.* Walsh was decided; and he·held that no title passed even to a *bona fide* purchaser from one who had obtained the goods by false pretenses. He construed section 30 as defining what constituted a felony, and held that as, by 2 *R. S.* 767, § 53, every person obtaining goods by false pretenses was liable to be punished by imprisonment in the state prison, he was guilty of felony, and that the courts were bound to say, that when the legislature altered the law, as to what constituted a felonious taking, they intended that such alteration should have its full effect, and the principle should be extended and carried out in all its ramifications.·

In Peabody *v.* Fenton (3 *Barb. Ch.* 451, 462) decided in 1848, Chancellor WALWORTH says: "There can be no doubt, from the evidence in this case, that Fenton obtained the mortgage from the complainant by false pretenses amounting not only to a gross fraud but also to a felony under the Revised Statutes." The doubt which he is stated in Fassett *v.* Smith to have expressed was not as to whether the false pretenses amounted to a felony, but as to the correctness of the holding in Andrew *v.* Dieterich (14 *Wend.* 36), that the operation of the Revised Statutes in making such frauds felonies, was such that the power of a fraudulent vendee of goods to transfer a

valid title to a *bona fide* purchaser no longer existed, and on this point he declined to express an opinion.

In Robinson *v.* Dauchy (3 *Barb.* 20–29), the court treated the obtaining of goods by false pretenses as a felony.

In People *v.* Van Steenburgh (1 *Park. Crim.* 39), it was held that an offense as to which there was a discretion in the court to punish either by imprisonment in the state prison, or by fine, or imprisonment in a county jail, was within the statutory definition of felony. Accordingly, one who, without a design to effect death, killed a human being, while engaged in the commission of an act punishable as above, was held to have been engaged in the commission of a felony, and was on that ground convicted of murder and sentenced to be executed.

This view of the law was approved by the Supreme court, to whom the question was submitted by the Governor.

In Shay *v.* People (22 *N. Y.* 317), it was held, that one who had been convicted of *petit larceny* as a first offense, was a competent witness, inasmuch as that offense was not punishable by death or imprisonment in the state prison, and therefore was not convicted of a felony within the definition in 2 *R. S.* 702, § 30.

In People *v.* Park (41 *N. Y.* 21), it was held that burglary in the third degree was a felony under the definition in 2 *R. S.* 702, § 30, being punishable by imprisonment in the state prison, although the term " felony " is not used in the statute defining the offense. The opinion was delivered by the same learned judge who delivered the opinion in Fassett *v.* Smith, and he says that his conclusion is not in conflict with Fassett *v.* Smith, but he reconciles the cases by placing his opinion upon a new ground, different from that taken in 23 *N. Y.;* and in the later case says that Fassett *v.* Smith related to obtaining goods by false pretenses, the punishment for which was in the alternative, state prison, county jail, or fine, and hence, not within the statutory definition of felony.

This last ground we are quite unable to adopt, inasmuch as the language of section 30 is that the term felony shall be construed to mean an offense for which the offender is *liable* to be punished by death or by imprisonment in a state prison. It is not confined to cases in which he must be so punished. The max-

imum punishment to which he is *liable* to be subjected is the test by which the degree of the crime must be determined. People *v.* Van Steenburgh, *supra.*

In the case now before us, there is no alternative of punishment by imprisonment in a county jail. If there is any imprisonment it must be in a state prison, though a fine may be substituted. This, we apprehend, moreover, is not very important.

In People *v.* Bragle (26 *Hun*, 378; affirmed, 88 *N. Y.* 586), the offense created by the very act now under consideration (*Laws of* 1875, chap. 19), was treated as a felony, though the point was not expressly decided. The points raised were of no importance unless the offense was a felony. But in overruling them the court did not intimate any doubt as to the grade of the offense, and overruled them on other grounds. The case of Fassett *v.* Smith, if construed as holding only that the statutory change which converted the offense of obtaining goods by false pretenses into a felony, did not change the former rules of law in respect to the rights of a *bona fide* purchaser of goods from a fraudulent vendee, need not be further discussed here. Ch. J. SAVAGE, in Andrew *v.* Dieterich (14 *Wend. supra*), was of opinion that the statutory change in the grade of the offense should be carried out in all its ramifications. Chancellor WALWORTH doubted whether that was a correct view of the legislative intention and of the effect of the statute. And even now, under the Penal Code making the offense larceny, the same question is presented. We do not propose to consider it here. All that it is necessary to say now is that notwithstanding the views expressed in the prevailing opinion in Fassett *v.* Smith, we are of opinion that under *Laws of* 1875, chap. 19, and 2 *R. S.* 702, § 30, the offense for which the defendant was indicted, was a felony, and, for the reasons stated, the conviction cannot be sustained.

The conceded facts being such that under the present indictment no conviction could be had, it seems useless to direct a new trial.

Judgment of Supreme court and court of Oyer and Terminer reversed.

All concur.