# Supreme Court,—General Term.—First Department.

## March, 1887.

## PEOPLE v. DEGRAFF.

EVIDENCE—VOLUME OF PROCEEDINGS PRINTED BY AUTHOR-
ITY SUPERVISORS—L. 1878, CH. 219, § 1.—AUTHORITY TO
PRINT—WRONGFUL—INTENT—RES GESTÆ—GOOD CHAR-
ACTER.

The defendant was prosecuted for wrongfully obtaining, receiving and con-
verting to his own use, money of the county, with intent to defraud the
county. *Held*, that laws of 1878, chapter 219, section 1, providing,
among other things, that "Any act * * * or proceeding of a board of
supervisors * * * and any recital of occurrences taking place at the
sessions thereof, may be read in evidence on any trial from a volume
printed by authority of the * * * board, authorized the reception in
evidence of such volume printed by the authority of the board. Per
LANDON, J., *Held*, per LEARNED P. J., dissenting, that the statute
cited, did not authorize the reading from such book, what purported
to be reports of committees, etc., that without the statute the book
was not entitled to be read in evidence on such a trial; and that the
statute must not be extended beyond its language.

*Held*, that the testimony of the printer of the volume was sufficient to make
a *prima facie* case that he printed it by the authority of the board.
LANDON, J.

*Held*, that upon the trial of the defendant for peculation, testimony toas
transactions in the year following, and similar in character to those
charged, were competent as evidence to show guilty knowledge on the
part of the defendant. Per LANDON, J.; LEARNED P. J., dissenting.

*Held*, that the defendant was entitled to the admission in evidence of a
conversation between him and the clerk of the board of supervisors,
when the money in question was paid, and tending to exculpate him,
and forming part of the *res gestæ*.

*Held*, that there being no evidence which could sustain a finding by the
jury that the defendant was implicated in the loss of certain papers, it
was error to leave the question to the jury. Per LANDON, J.

*Held*, that it is erroneous to charge the jury that good character was en-
titled to some consideration on their part upon a balanced question,
where a doubt intervenes, but that they might not array it against posi-
tive or convincing evidence of a crime. LEARNED, P. J.

APPEAL from judgment of conviction.

36

The defendant John M. De Graff, was indicted and convicted upon trial before the Schoharie county sessions, for wrongfully obtaining, receiving and converting to his own use, on or about February 1, 1882, the sum of $400 of the money of the county, with intent to defraud the county. The conviction was had under chapter 19, section 1, Laws 1875, being the "act to provide more effectually for the punishment of peculation and other wrongs affecting public moneys and rights of property."

The defendant was superintendent of the poor of Schoharie county from January 1, 1881, to December 31, 1883. The county had placed certain poor children in the Albany orphan asylum, and the bill for their support, rendered November, 1881, amounted to $631.50. The superintendent of the asylum sent this bill to the defendant. It seems the custom was for the board to audit such bills and pay the money to the superintendent of the poor, who would pay the asylum. The defendant delivered this bill to the board of supervisors, in connection with sundry other bills due other parties upon account of the poor, and in connection with his personal bill against the county. He also submitted to the board his report containing a detailed statement of the expenses of the poor. The aggregate of all the bills present ed by him, including the asylum bill and his personal bill, amounted to about $6,400. The aggregate of the audit of all the bills presented by the defendant was $6,319.03. Upon the trial, the defendant's report and his personal bill, as also most of the original record of the proceedings of the board of supervisors for 1877, could not be found. From the printted proceedings of the board of supervisors for the year the "report of the committee on county superintendent of the poor's accounts and vouchers for the year 1881" was read in evidence. It contained among the items recommended for audit and allowance the following: "The amount paid asylums and refuge, $1,031.50." This amount was audited and was embraced in sundry checks, amounting to $6,319.03 given by the clerk of the board to the defendant. Of the

$1, 031.50 the defendant paid the superintendent of the asylum $631.50 and kept the balance. The printed proceedings did not contain a copy of the defendant's report or of his personal bill.

To prove that the defendant took or kept the $400 knowingly and with a dishonest intent, the people gave evidence tending to show that the bill of the same asylum for the year 1882 was $552.70; that it was audited at $852.70; that the $852.70 was paid the defendant, who paid the asylum only $552.70.

*W. C. Lamont*, for the prisoner, appellant.

*George H. Hiller*, district attorney, and *James A. Lynes*, for people respondent.

LANDON, J.—The original bill presented by the defendant to the board of supervisors for audit in 1881, and his report to the board, were lost. The original records of the board for that year were also lost.

We think the printed copy of the proceedings of the board of supervisors, for the year 1881, was properly read in evidence under chapter 219, Laws of 1878. That act provides, among other things, that "Any act * * * or proceeding of a board of supervisors, * * * and any recital of occurrences taking place at the sessions * * * thereof, may be read in evidence on any trial * * * from a volume printed by authority of the * * * board." The second section of this act was amended by chapter 328, Laws 1884, so as to make the printed volume properly certified "the book of records" of the board, but the first section was not changed. No doubt this book of records would have the force of the original record, but the first section which authorizes the "volume printed by authority of the board" to be read in evidence, remains unchanged.

The testimony of M. Bellinger, the printer of the volume, was sufficient to make a *prima facie* case that he did print it by the authority of the board. The statute does not require

that the printed copy shall be proved to have been compared with the original.

It was proved thereby that a bill of which the true amount was $631.50 was audited by the board and paid the defendant at $1,031.50. It was otherwise proved that this excess of $400 was retained by the defendant.

It was not proved that the defendant rendered this bill at $1,031.50. It did appear that his entire bill as presented to the board was not audited at its full amount, and there was some evidence tending to show that it was reduced about $400.

It was claimed upon the part of the defendant that he did not know how much his original bills were reduced in the aggregate, and, therefore, it did not appear that he knew, when he received the $400, that it was not rightfully his own.

But the people proved that the like transaction occurred the following year, whereby the defendant obtained $300 by means of another increase of the amount of the audit of the bill of the same asylum for that year. If there were no authority in point we should naturally think that the second attempt was hazarded because of the apparent success of the first, and thus we should reach the conclusion of guilty knowledge in the receipt or detention of the money first received. At any rate it seems to bear strongly upon the question of guilty knowledge. We think the evidence was competent. *Bielschofsky* v. *People*, 3 Hun, 40; S. C. 60 N. Y., 616; *Copperman* v. *People*, 56 N. Y., 591; *People* v. *Dowling*, 84 N. Y., 478–486; *People* v. *Lyon*, 1 N. Y. Crim. Rep. 400, S. C., 33 Hun, 623. This case was reversed, but on other grounds, 99 N. Y., 210., 3 N. Y. Crim. R. 161.

The defendant however offered, but was not allowed, to testify that at the time the checks were handed him by the clerk of the board of supervisors, in which the $400 were included, he asked the clerk what his bills were audited at, and the items where he had been cut in his bills, and that the clerk responded : " You pay the items on this pay-roll (meaning

the list in which the asylum bill was carried out at $631.50), and the balance of the money is yours; that balance is stated in this account at $807.50, and that will show you how much your bill has been cut and how much allowed."

We have examined the case to ascertain if there is any testimony fairly tending to show any complicity of the clerk and the defendant with each other, or that the defendant had surcharged the asylum bill, or that he had since purloined that bill, or the original records of the board of supervisors. If such testimony existed, there would be reason to hold that the defendant's conversation with the clerk, instead of being helpful to indicate the ignorance under which he received $400 too much, was a cover invented to disguise his real knowledge. But there is no affirmative evidence of these acts. We have these facts: first, that the asylum bill was audited for $400 too much the first year; second, that it was audited for $300 too much the second year; third, that these two sums were included in the aggregate with many other sums, and that the defendant had the benefit of the increased audits both years. It does not appear that the bills were surcharged by the defendant.

If we may indulge in inference of some probability we should infer that the clerk carried the increase into the report and audit both years, without any increase in the original bills. With this assumption the question remains, would the clerk do this without collusion with the defendant? Could the defendant receive this guilty excess in ignorance that it existed? If the defendant had been permitted to testify to the conversation between himself and the clerk, the answer proposed by his counsel might not have eliminated the difficulty which these questions suggest. But we are to bear in mind that the defendant was entitled to the benefit of the presumption of innocence until his guilt should be shown, and that presumption clothed him with innocence with respect to any collusion with the clerk, with respect to surcharging his bill, with respect to purloining his own bills or the records of the board, until some affirmative evidence tending to show his guilt in some of these respects had been given.

We therefore think that, as the case stood, the defendant was entitled to the benefit of the conversation between himself and the clerk, when the clerk gave him the checks in which the $400 were included and covered up. Clearly that conversation was part of the *res gestæ*, and, if honestly had, tended to show that the defendant did not know that he had received $400 too much, and, therefore, did not knowingly take it with a dishonest purpose.

The defendant's counsel requested the court to charge that there is no proof that implicates the defendant in the loss of his original report to the board, and in the loss of his personal account rendered to the board. The court declined so to charge, and remarked: " I submit the entire question to the jury as one of the facts of the case."

The jury were, therefore, at liberty to find that the defendant was implicated in the loss of these papers. Clearly, if they did so find, the conclusion of the defendant's guilt would be almost irresistible.

There was no evidence to justify the finding.

The conviction and judgment must be reversed and the case remanded to the Schoharie county sessions for a new trial.

LEARNED, P. J., concurs in the results ; MAYHAM, J., not acting.

LEARNED, P. J.—Concurring in the result, there are some things in the opinion of my Brother LANDON with which I do not agree.

Chapter 219, Laws 1878, § 1, speaks of " any act, ordinance, resolution, by-law, rule or proceeding," and " any recital of occurrences," etc. All of the book produced in evidence, beyond page 50, consists of sundry reports of committees, abstracts of town audits, and the like. I see nothing in the statute which authorizes the reading from a printed book of what purport to be reports of committees, and the like. Yet extracts from these were given in evidence on the trial from that printed book.

The certificate of the clerk, required by that statute, is on

page 50, and certifies that the foregoing is a true copy of the journal, etc. ·Nothing is certified as to the reports, etc., which follow.

Without the statute the printed book would be no evidence against defendant. We must not extend the statute beyond its language, which is limited to the matters which take place in the board, and to those which are done by them.

The people gave evidence tending to show that a year after the commission of the alleged crime the defendant obtained money from the county through a similar increase of an asylum bill.. I do not think that such evidence came within the exception, which ought not to be extended, and which permits proof of other offenses of the defendant, in order to characterize the act in question. It would be of no use to discuss this point, or to give my reasons at length.

In this case the defendant's account, as appears by the report of the committee, consists of twelve items. It seems to be admitted that as to ten of these items no question was made, and that they were reported as rendered.

The item called his personal account, being for services and disbursements, was rendered at about $1,300, and was allowed at $807.60. The asylum bill of $631.50, which defendant testifies he gave to Dr. Handy, to present to the board, was allowed by the committee at $1,031.50. Thus it will be seen that while one item was raised $400, another was reduced about $500. The items remained unchanged, and therefore the total must have been reduced in auditing.

The total of the audit was $6,319.03. This total sum was paid to defendant in four checks, no one of which corresponds in amount with any item of the audit; but the four equal the total sum.

Now as it appears that the total received by defendant must have been less than his total claim (taking the asylum bill at $631.50), I fail to see the evidence that defendant knew that he was receiving more than was owing him. I do not speak of his intent, but of the fact. The transaction of

the following year is no evidence, in any view, of the facts of the previous year. And I see no proof of defendant's knowledge of the amount at which the asylum bill was allowed, or of the amount to which his personal bill had been reduced. The payment to him was in gross and did not exceed the amount which he had claimed should be paid him.

I think also that injustice was done the defendant when the jury were charged that good character was entitled to some consideration on the part of a jury upon a balanced question where a doubt intervenes; but they might not array it against positive or convincing evidence of a crime. Upon a balanced question when a doubt intervenes the jury should acquit.

Evidence of good character may create a doubt against positive evidence of the defendant's guilt. *Remsen* v. *People,* 43 N. Y., 6.

I concur in the result of reversing the judgment and granting a new trial.