---

## THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CHARLES JOHNSON, Appellant.

*Commitment of a person charged with crime — when held to be sufficient to justify his detention — omission to administer the oath required by section 412 of the Code of Criminal Procedure to a constable in charge of a jury, permitted to view the place where the crime was committed, is merely an irregularity.*

Upon an appeal from a judgment convicting the defendant of the crime of murder in the first degree, it appeared that the murder was committed while he was attempting to escape from the county jail of Seneca county, where he was held under two commitments issued by a justice of the peace, one charging grand

larceny in the first degree and the other burglary in the third degree. The defendant's counsel contended that it did not appear that the defendant was in lawful custody or confinement, because the warrant and commitment were insufficient in terms to justify their execution by reason of the omission of evidence of any information to support the warrant, and of any order of the justice to authorize the commitment, and further, that the latter did not state the nature of the crimes with which the defendant was charged.

*Held*, that the objections were not well taken.

That as the warrant recited that it was issued upon information on oath, and had the form prescribed by statute, it was sufficient.

That, although the magistrate was required by the statute to certify the testimony taken on the examination had after the arrest, and return it and the depositions taken upon the information to the court, there was no necessity of producing them upon the trial in support of the warrant or commitment.

That the recital in the commitment, of the crimes with which the defendant was charged, as grand larceny in the first degree and burglary in the third degree, was a sufficient statement of the nature of the crimes for the purpose in view.

The common jail is a "prison" within the meaning of section 85 of the Penal Code, as that term is defined in section 92 thereof.

That an objection to the panel of jurors, because drawn from the north jury district, instead of the entire county, was not well taken.

At the close of the evidence on the part of the prosecution the jury were permitted to view the place where the crime was charged to have been committed, the court ordering the jury to be conducted there under the charge of two constables and to be shown the place. After the rendition of the verdict, the counsel for the defendant moved to set it aside upon the ground that no officer was specially sworn to accompany the jury to view the premises.

*Held*, that the motion was properly denied, as it appeared that prior to the retirement of the jury the clerk had administered to the two constables the oath prescribed by section 414 of the Code of Criminal Procedure, which embraced, in terms, substantially all the requirements of the oath prescribed by section 412 thereof.

That the omission to administer the oath was merely an irregularity which did not require or justify a new trial unless there was some opportunity to conclude that the defendant was prejudiced thereby.

*People* v. *Draper* (1 N. Y. Crim. R., 138) followed; *People* v. *Palmer* (43 Hun, 397) distinguished.

APPEAL from a judgment entered upon a verdict rendered at the Seneca Oyer and Terminer, convicting the defendant of the crime of murder in the first degree.

The defendant was charged jointly with Edward Caldwell and Marcus Fisk, by indictment containing twelve counts, with the crime of which he was convicted and took his trial separately. The victim of the alleged crime was John Walters, whose death was caused by

blows received by him on the head in the jail of Seneca county, at Waterloo, January 9, 1887, while he was, by the direction of the sheriff, proceeding to lock the cells occupied by the persons in custody there, of whom the three indicted persons were a portion. They made the attack upon the deceased for the purpose of making their escape from the jail, and their attempt was unsuccessful.

*Corydon Rood*, for the appellant.

*Frederick L. Manning*, for the respondent.

BRADLEY, J. :

The defendant was arrested by virtue of a warrant issued by a justice of the peace of Seneca county, charged with the commission of the crime of burglary and grand larceny in the first degree, and after an examination was had before the magistrate he was, on two commitments issued by the justice, one charging grand larceny in the first degree and the other burglary in the third degree, taken to the jail of the county and shackles put upon his ankles January 8, 1887. And Caldwell and Fisk were also confined in the jail, shackled in like manner. On the following day they, by means of knives made into saws, cut off the bolts of the shackles and removed them, and having failed to make an opening through the wall, concluded, as the evidence tends to prove, to overpower the attendants and escape.

They were permitted during the day to leave their cells and walk about the corridors, and the practice was to lock them in the cells at night. The plan arranged by them was to make their escape when entry was made to lock the cells. In the evening John Walters was directed by the sheriff to do this, and the outer door and inner iron door were opened for him to go down to the cells; and when he reached the foot of the stairs he was stricken down. The iron door was held by one of them, so that the turnkey was unable to close it, and these three prisoners rushed up the stairs, struck and disabled him, proceeded a short distance, met the sheriff, assaulted him, who, after resisting with his club for a time their attack, proceeded to draw his revolver, and the prisoners retreated down the stairs and into their cells. Walters was taken up senseless. Medical aid was given him. His skull was found to be frac-

tured and he died the next day. The evidence tends to prove that the defendant had provided himself with an iron poker, or stove shaker, and that with it he struck the deceased a violent blow on the head, and that one of the other indicted parties had a club which was used by him in like manner, and that the blows so given caused the death of Walters. The conclusion that the defendant was guilty of the offense charged was permitted if the other elements requisite to constitute the crime were established. As appears by the commitments the defendant was confined in the jail on the charge of felony. The killing was done in his attempt to escape, and evidently in aid of such purpose. The statute provides that a prisoner who being confined in a prison or being in lawful custody of an officer or other person, by force or fraud escape from such prison or custody, is guilty of a felony if such custody or confinement is upon a charge, arrest, commitment or conviction for a felony (Penal Code § 85); that an act done with intent to commit a crime, and tending but failing to effect its commission, is an attempt to commit that crime (Id., § 34), and that a person who unsuccessfully attempts to commit a crime is indictable and punishable by imprisonment for not more than half the longest term prescribed upon conviction for the commission of the offense attempted. (Id., § 686.) It follows that upon conviction of an attempt in such manner to escape from lawful confinement on the charge of the crime mentioned in the commitment, the defendant would be punishable by imprisonment in State prison, and the offense would be felony. (Id., § 5; *People* v. *Lyon,* 99 N. Y., 210.) One of the definitions of murder in the first degree is the killing of a human being (unless it is excusable or justifiable) when committed without a design to effect death, by a person engaged in attempt to commit a felony either upon or affecting the person killed or otherwise. This apparently brings the offense within that charged in the indictment. But it is contended on the part of the defense that it does not appear that the defendant was in lawful custody or confinement, because no authority of the justice appears to issue the warrant upon which the defendant was arrested or the commitments pursuant to which he was confined in the jail, and it is insisted that the commitments were insufficient in terms to justify their execution or to show that he was in custody or confinement upon the charge of

felony. And this contention is founded upon the omission of evidence of any information to support the warrant and of any order of the justice to authorize the commitment, and, further, that the latter did not state the nature of the crimes with which the defendant was charged. We think these objections were not well taken. The warrant recites that it was issued upon information on oath (Code Crim. Pro., § 145), and had the form prescribed by statute. (Id., § 151.) It appears that an examination was had after the arrest, and although the magistrate was required by the statute to certify the testimony and return it and the depositions taken upon the information to the court (Id., §§ 204, 205), there was no necessity of producing them upon the trial in support of the warrant or commitment. The recital in the latter of the crimes with which the defendant was charged as grand larceny in the first degree, and burglary in the third degree, was a sufficient statement of the nature of the crimes for the purposes in view.

While they are names given by law to offenses they express in some degree the nature of the crimes and as much so as can be done without reference to the facts constituting them which do not seem essential for the uses of commitments. Each of them recited that an order had been made by the magistrate, and in all respects substantially conformed in terms to the statutory requirement. (Id., § 214.) It was unnecessary to go back of them and prove that an order was indorsed by the justice upon the depositions which he was directed to make. (Id., § 208.) This was all embraced within the recitals of those mandates, which conferred upon the sheriff the requisite authority, and prima facie at least characterized the charges upon which the defendant was in custody and confinement at the time in question.

The court charged the jury that " a person confined in a common jail under a lawful commitment on a charge of felony before indictment who escapes from jail commits a felony, and if in attempting to escape, whether he succeeds or not, he kills a person, that act is by the statute murder in the first degree. And exception was taken. The common jail is a prison within the meaning of the statute. (Penal Code, § 92.) The court was not requested to charge further in that respect. And in view of the facts established by the evidence and to which the charge related there was no error presented by the

exception as taken. The views already given sufficiently cover the questions raised by it. The demurrer to the indictment was properly overruled. And the objection to the panel of jurors because drawn from the north jury district instead of the entire county, we think was not well taken. (Laws of 1822, chap. 137, § 3 ; 3 R. S. 471, Code Crim. Pro., § 358 ; Code Civil Pro., § 3347, sub. 7.)

At the close of the evidence on the part of the prosecution and before any was introduced by the defense it was suggested by the people's counsel that the jury be permitted to view the place where the crime was charged to have been committed. The court thereupon ordered the jury to be conducted there under the charge of two constables and be shown the place and appointed Mr. Hazelton for that purpose. The jury were taken there in a body and returned into court and the trial proceeded. After the rendition of the verdict the counsel for the defendant moved to set it aside " upon the ground that no officer was specially sworn to accompany the jury to view the premises." The motion was heard on affidavits for its support and in opposition. And the motion was denied. Upon the specific question raised by the motion one of the attorneys for the defendant, by his affidavit, says that no officer was sworn as required by the statute. And the affidavit of the clerk of the court was, that previously to the retirement of the jury to make the view he had administered an oath to the two constables, " to retire with the jurors and keep them together in some convenient room to be furnished by the sheriff, that they should not suffer any person to speak to them or to speak to them themselves in relation to the trial and to return with them at the order of the court." That those were the officers who with Mr. Hazelton escorted the jury to the jail and that said oath was not readministered to said constables immediately preceding their taking said jury to the jail they having already taken it.

The oath evidently was not administered especially in reference to taking charge of the jury while proceeding to take the view ; but the oath which the officers had taken embraced in terms substantially the requirement of the statute, which provides that the officers " must be sworn to suffer no person to speak to or communicate with the jury nor to do so themselves on any subject connected with the trial, and to return them into court without unnecessary delay or at a specified time." (Code Crim. Pro., § 412.) But it is

said that the oath so taken was administered in reference to a recess had prior to the occasion in question and that its purpose had been accomplished. (Id., § 414.) However that may be, the omission to administer the oath was an irregularity merely, and did not require or justify a new trial unless there was some opportunity to conclude that the defendant was prejudiced. (*People* v. *Draper*, 1 N. Y. Crim. R., 138.)

The statute provides for a view when, in the opinion of the court, it is proper. (Id., § 411.) And when the suggestion was made the defendant's counsel expressly consented to it, and one of his attorneys and counsel attended the jury and returned with them into court, the trial proceeded, and the evidence on the part of the defense was given without raising any question in respect to the correctness in any respect of the view made by the jury or relating to their action on the occasion. The defendant's attorney who attended the jury and one of the guards in the jail by their affidavits stated that the latter was asked by one of the jurors, while taking the view, several questions regarding the location of the cells in which the prisoners Johnson, Caldwell and Fisk were confined on the night of the murder, also as to the location or spot where the body of John Walters lay, and that such questions, or some of them, were answered by him.

The affidavits of two of the jurors were, that one of the jurors asked some question of one of the officers of the jail. That Mr. Hazelton promptly informed the officer that he must answer no questions, and said to the jury that they had no right to ask any, and that this was all that occurred in that respect. Whatever view may have been taken of the statements in the affidavits it cannot be assumed that the appearances there exhibited to the jury, in respect to the situation and localities within the jail so far as they related to the subject of the trial were incorrect or different from those as represented by the diagram and other evidence on trial, else the defense would have taken the opportunity which it had, to give evidence on the subject. This view taken by the jury, although no part of the trial, in court was in some sense the reception by them of evidence bearing more or less upon the matters involved. Whether the defendant was or not present with the jury does not appear, nor does it appear that he was denied any right he had

in that respect, and it appears that he was represented at the view by his attorney and counsel who was engaged in the defense on the trial. The reasons therefore which furnished the ground for a new trial in *People* v. *Palmer* (43 Hun, 397) have no necessary application here.

In criminal cases and especially those involving such momentous results as this one, it is quite essential that no irregularity on the part of the jury is permitted which can possibly prejudice the accused, and in such case a new trial will ordinarily be granted unless it clearly appears that it did not affect the verdict. (*East-wood* v. *People*, 3 Park. Cr. R., 25.) It does not appear that the jurors were separated or that there was any misconduct or irregularity on their part other than as represented by the affidavits before mentioned. We think there is no opportunity for inference that the result may have been in any manner affected or influenced by the alleged irregularity in any view which may be taken of it upon the affidavits. And that the judgment and conviction should be affirmed.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

Judgment and conviction affirmed and proceedings remitted to the court of Oyer and Terminer of Seneca county.