In the Matter of the Petition of FRANCES LAGRANGE for Decree Awarding Letters of Guardianship of Persons and Property of RITA WARGER and Another, Infants under the Age of Fourteen Years.

Surrogate's Court, Kings County, October 19, 1934.

*Dermody & Seligman*, for the petitioner.

*Alfred J. Wentz*, for the objector.

WINGATE, S.   The present, like many other proceedings affecting human relations, requires a determination involving potentially distressing results to one or more of the parties concerned.   In this instance, however, the onus of the result, if any, rests upon the Legislature and not upon the court.

The question for determination concerns the person to whom letters of guardianship of two infants, respectively of the ages of ten and twelve years, shall issue.   The applicant is a maternal aunt in whose favor the maternal grandmother has waived.   Opposition is voiced by the father of the children, who seeks the appointment for himself.   Since the death of their mother, the children have resided with the former applicant.   The infants are each entitled to an inheritance of $8,039.39 left them by their mother's will; wherefore, there is obviously a present necessity for the appointment of some person in this capacity.

The selection of the particular individual to whom an appointment as guardian of an infant shall be granted is ordinarily discretionary with the court (Surr. Ct. Act, § 179; *Kendall* v. *Kendall*, 200 App. Div. 702, 705), and in cases where such discretion exists,

any court is extremely loathe to supersede the usually paramount right of a parent to be appointed the guardian of his own children. (*Matter of Munn,* 101 Misc. 171, 173.)

In the present instance, however, the court possesses no discretion. It has been demonstrated that an appointment is necessary and no one has claimed, or been suggested for, the office other than the aunt and the father. Each has made allegations of unfitness against the other, but both have, with the single exception to be noted, denied these allegations, and again, with this exception, neither has presented proof in substantiation.

The single exception is the allegation and demonstration that on the 18th day of December, 1911, the father was " indicted for burglary, third degree, grand larceny, second degree, and receiving stolen goods, and convicted of the crime of attempt to commit grand larceny, second degree, upon his own confession and plea of guilty." The certified copy of the record proceeds: " the court pronounced judgment of sentence as follows: The Court being satisfied that the said defendant * * * is 18 years of age, and has never previously been convicted of a felony, whereupon, it is ordered and adjudged by the Court, that the said * * * for the folony aforesaid, whereof he is convicted, be imprisoned in the New York State Reformatory at Elmira, there to be dealt with according to law."

The aunt asserts that the fact of this conviction precludes this court from the appointment of the father as guardian of his children. The question thereupon presents itself as to whether the mere fact that a parent, in his youth, was convicted of an offense which the law denominates a felony, must, after the lapse of twenty-two years, during all of which time, so far as demonstrated by the record, he has lived an honest and upright life, *ipso facto*, be deprived of the guardianship of his own children who were born years subsequent to the commission of the offense.

Section 94 of the Surrogate's Court Act, so far as pertinent, reads: " No person is competent to serve as an executor, administrator, testamentary trustee or guardian, who is * * *

" 4. a felon."

As this court pointed out in *Matter of Canter* (146 Misc. 123, 129): " Obviously a felon, though the term is undefined in the body of New York statutory law, is ' a person who commits a felony.' (Stand. Dict. 1930 ed.) The meaning of ' felony ' is defined in section 2 of the Penal Law as ' a crime which is or may be punishable by: 1. Death; or, 2. Imprisonment in a state prison.' " (See, also, *People* v. *Lyon,* 99 N. Y. 210, 223.)

It is argued on behalf of the father that he is not classifiable as a felon since, as a matter of fact, he was not actually punished by " imprisonment in a State prison " within the terminology of the statute, but was committed to the New York State Reformatory at Elmira. This contention, however, loses sight of the authoritative determinations of the Court of Appeals to the effect that " the maximum punishment to which he is liable to be subjected is the test by which the degree of the crime must be determined " (*People* v. *Lyon*, 99 N. Y. 210, 223), and that " it is not the actual sentence, but the possible one which determines the grade of the offense." (*People* v. *Hughes*, 137 N. Y. 29, 34.)

Under section 1297 of the Penal Law, which has not been amended since 1892, grand larceny in the second degree is punishable by imprisonment for a term not exceeding five years, and under section 261, an attempt to commit such crime, of which the respondent was convicted, is punishable by imprisonment for not more than one-half such period. Section 2183 provides that imprisonment for more than one year must be in a State prison except in certain specified cases in which, in the discretion of the court, the offender may be incarcerated in certain other enumerated places. It is obvious, therefore, that the crime of which the respondent was convicted " *may* be punishable by * * * imprisonment in a State prison," and, therefore, falls within the definition of section 2 of the Penal Law as a felony.

That counsel for the father senses that his client falls within the statutory definition of a felon is indicated by the fact that he argues that his sentence to the " Elmira Reformatory was in effect a pardon from the felony," and that a " pardon removes this incompetency." The latter position may readily be admitted without assent to the former, the fallaciousness of which is apparent. A court has no power of pardon (*People* v. *Warder*, 120 Misc. 94, 97), which resides solely in the Governor (N. Y. Const. art. 4, § 5), with the result that were the statutory powers of a court to suspend a sentence or to impose less than the maximum permitted by law, to be considered an exercise of the pardoning power, they must inevitably be held unconstitutional. (*People ex rel. Forsyth* v. *Court of Sessions*, 141 N. Y. 288, 294.) The statutes authorizing a different sort of penalty from that usually inflicted and of remitting certain customary consequences of conviction, in no way alter the nature of the offense, but permit the exercise of discretion by the courts involved in respect to the punishment to be meted out upon a conviction therefor.

The sum total of this demonstration is that the father of the infants in the case at bar is a " felon " within the terminology of

section 94 of the Surrogate's Court Act and consequently a person who is not "competent to serve as * * * guardian" by reason of the express inhibition of the section. "Competent" is defined as "possessing the requisite natural or legal qualifications." (Stand. Dict. 1930 ed.)

This direct legislative fiat has, therefore, determined that the father of these infants on the facts irrefutably demonstrated, is not a person proper to be placed in the position of guardian. In the face of this absolute disqualification by statutory enactment, the court possesses no discretion whatsoever and were it to grant letters in spite of it, such act would be reversible as a matter of law. It must be true that such a flat and sweeping disqualification will work great hardship and injustice in many cases. The rule leaves no room for penitence and reformation and is consequently opposed to modern principles and practice of enlightened penology. The remedy is, however, a legislative and not a judicial function, and until it has been supplied, the courts must at times be the unwitting instruments of hardship and even of downright injustice.

Since it is necessary that a guardian of these infants be appointed, and the only competent person who has been suggested is the maternal aunt against whom no disqualifying demonstration has been made, it follows that letters will issue to her in that capacity.

Enter decree on notice accordingly.