## THE STATE *v.* MOORE *& a.*

Where a felony is procured in another State, to be committed within this State, the accessory before the fact cannot be tried for the offence of procuring the commission of the crime, in the county in this State within which the principal offence is committed.

INDICTMENT, found by the grand jury for the county of Strafford, at the January term of the court of common pleas, A. D. 1852, against Charles Curtis, Isaac Pray, and John Moore, of Berwick, in the county of York and State of Maine, charging said Curtis and Pray with having, on the ninth day of September, A. D. 1849, set fire to, burned and consumed a certain shop of one Frederic A. Lord, situate in Somersworth, in said county of Strafford, and said Moore with having on the same ninth day of September, incited, procured and hired Curtis and Pray to commit the said felony and burning. Upon this indictment Curtis was

tried and convicted, and a *nolle prosequi* was entered as to Pray.

Moore moved the court that he might not be put upon trial for the offence charged against him, because, protesting that he was not guilty of it, he says that the offence, if any was committed, was committed not in said county of Strafford, where the indictment was found against him, but was committed in Berwick, in the county of York and State of Maine.

For the purpose of obtaining a decision of the question of law raised by said motion, and for no other purpose, it is admitted by the counsel for the State, that the alleged acts of Moore in relation to the procuring, hiring, &c., if they had been done and committed within the limits of the State of New Hampshire, would only have made said Moore an accessory before the fact; and that they were done and committed by Moore in said Berwick, and wholly without the limits of the State of New Hampshire.

*Wells, Bell, Christie & Kingman,* for Moore.

By the common law, crimes are local, and can be tried only in the county where they are committed. 4 Bl. Com. 303–4–5; Gould Pl. 128–9; Story Confl. Laws ch. 16.

The constitution of the United States requires that the trial of all crimes shall be in the State where they are committed. Const. U. S. Art. 3 § 2.

By the common law, an offence being committed in one county and procured by an accessory in another county, the accessory could be tried in neither.

This was altered by statute of 2 and 3 Edw. VI. ch. 24, which enacts that in such case the accessory may be tried in the county where his offence was committed, and not elsewhere. 2 Hale P. C. 163.

Such remained the law of England up to the time of the American revolution. The statute 7 Geo. IV. referred to

by the attorney general in his brief, was passed after the separation of the United States from England.

The law of England, as it stood up to the American revolution, is the law of New Hampshire now, unless it has been altered by statute.

The second section of chap. 225 Rev. Stat. was intended to apply only to counties in this State. But if the statute were designed to apply to offences done out of the State, it is void *pro tanto.* Const. U. S. Art. 3 § 2, cited above ; *People* v. *Wright,* 2 Caines 213; *State* v. *Knight,* 1 Taylor 65, where a statute of North Carolina rendering those who in another State counterfeited bills of credit of that State (N. C.) liable to certain penalties, was held to be void.

But it is said Moore cannot be punished at all, unless he be in this State. Allowing this to be true, the hardship is no greater than it was in many cases in England by the common law. Bac. Ab. Indictment F.; 1 Ch. Cr. L. 146–[178–9.]

But the English courts did not exceed the strictest letter of the law on that account, and the hardships were remedied by statutes from time to time.

So the States here should pass laws to meet cases like the present, arising within their limits.

To show how the courts of other States feel bound by the common law in relation to the locality of offences, see *Adams* v. *People,* 3 Denio 190; 7 Sarg. & R. 469; *Commonwealth* v. *Andrews,* and the case of *Paul Lord* there mentioned. 2 Mass. Rep. 22.

*Sullivan, Attorney General,* for the State.

The offence of Moore, the accessory, is not punishable in Maine, because the crime was not consummated there, and because there is no statute in Maine applicable to a case like this. It is punishable in this State, and under this form of indictment, or not at all.

Accessories, before the fact, to a felony, may be tried in

The State *v.* Moore,

any court which shall have jurisdiction to try the principal felon. In proof of this I refer to Archbold's Cr. Pl. 26 § 23, also page 31 § 22; Roscoe's Crim. Ev. 217, 218.

WOODS, J. The present case is an indictment, found in the county of Strafford, in this State, against Moore, for the alleged offence of procuring Curtis and Pray to burn the building in Somersworth, for the burning of which they are charged in this indictment. Curtis and Pray are, for the purposes of this decision, to be regarded as the guilty agents of Moore in the felony. Moore was only an accessory before the fact, and whatsoever acts were committed by him, were committed in the county of York, in the State of Maine.

The question, then, is, whether by reason of the procurement of the commission of the felony, through the agency of persons guilty of the principal offence, Moore the accessory, is to be regarded in law as guilty of an offence in the county in which the principal offence was committed, and answerable for it therein. The venue was always regarded as matter of substance in criminal trials; and at common law, therefore, an offence commenced in one county, and consummated in another, could be tried in neither. 1 Chitty's Cr. L. 177. So if a mortal blow was given in one county, and the party died of it in another, it was doubted whether he could be punished in either. 1 Chitty's Cr. L. 178; Hawk. P. C. b. 2 c. 25 § 36, referring to and citing the Year Books, 6 Hen. VII. 10; and 10 Hen. VII. 28; Bac. Ab. Indictment F.; Preamble of 2 and 3 Edw. VI. chap. 24. See also Hawk. P. C. b. 1 c. 31 § 13, and authorities there cited.

At common law, an accessory to a crime committed in another county, it is said, could be indicted in neither county. 1 Chitty's Cr. L. 178; 1 Hale 62, 3.

But by the statute of 2 and 3 Edw. VI. chap. 24 § 4, it was enacted, " That when any murder or felony shall be hereafter committed and done in one county, and another

person or more shall be accessory or assessories in any manner of wise to any such murder or felony in any other county, that an indictment, found or taken against such accessory or accessories upon the circumstances of such matter, before the justices of peace, or other justices or commissioners to inquire of felonies, in the county where such offences of accessory or accessories, in any manner of wise shall be committed or done, shall be as good and effectual in the law, as if the said principal offence had been committed or done in the same county where the same indictment against such accessory shall be found."

Upon the question before us, in connection with the provisions of this statute, we have looked into the authorities and will now refer to them briefly, and state the result.

The law upon this subject, we think, is quite clear and well established, unless our statutes may be found to have altered it.

In 1 Chitty's Cr. L. 191, the doctrine is laid down thus : " If a shot be fired in one county, or poison be administered, which becomes fatal in another, the venue must be laid in the latter , but it would be otherwise, if A. in one county should procure B., a guilty agent, to commit a murder in the second, because, in that case, A. would be an accessory before the fact, and triable as such in the county where he was guilty of the murderous contrivance. On the other hand, if a person unconscious of the guilty design, as a child without discretion, be employed in the commission of murder, the venue must be laid in the county where the death happened, for they are merely the instruments, and the contriver is the principal." In *Girdwood's case*, the prisoner was indicted in the county of Middlesex, for feloniously sending a threatening letter. Upon the proof, it turned out that the letter which was directed to the prosecutor had been delivered by the prisoner in London to a person who put it into the post office at London, from which place it was conveyed, in due course of mail, to the prosecutor in Middle-

sex. He was tried for the offence in Middlesex, and the twelve judges of England were unanimously of opinion that the prisoner had been properly tried in Middlesex. 1 Leach C. C. L. 432.

In the case of the *King* v. *Coombes*, it was decided that a person, who, standing upon the shore, shot a man on the high seas, was guilty on the high seas, inasmuch as the crime is committed where the death happens, and not at the place whence the cause of the death proceeds. 1 Leach C. C. L. 169.

So in 1 Hale P. C. 616, and in Foster C. L. 349, the doctrine is laid down, that if A. in one county deliver poison to D., to be administered to B. as a medicine in another county, and D., not knowing that it is poison, administers it to B. in the second county, and B. die of it; or if a person in one county procure a child without discretion to burn a house in a second, the procurers, in such cases, would be principals in the felonies, though not present, and therefore ought to be indicted where the poisoning or burning is effected, although it would be otherwise if their agents were guilty as principals, because in the latter case the procurers would be accessories before the fact. 1 Hale P. C. 514; Foster C. L. 349.

It appears, also, that the agency of the defendant in a foreign county may be inquired of in the county where the principal act is done, and that the poisoning or burning, or other felony may be alleged to have been committed by the principal in the county where the act was done by the innocent agent. Stark. on Crim. Plead. p. 24.

The *King* v. *Brisac & Scott*, 4 East.'s Rep. 164, was an information at common law, for a conspiracy between the captain and purser of a man-of-war for planning and fabricating false vouchers to cheat the crown, which planning and fabrication were done upon the high seas. It was held by the court of King's Bench, that the offence was well triable in the county of Middlesex, upon proof of the receipt

by the commissioners of the navy of the false vouchers transmitted thither by one of the conspirators, through the medium of the post, and the application there by an innocent third person, a holder of one of the vouchers, a bill of exchange, for payment, which he there received. *Grose*, J., in delivering the judgment of the court, remarked thus: " That the delivery of such false vouchers, with such fraudulent intent, in pursuance of a conspiracy for that purpose, is an offence in the place where the vouchers were delivered, is a matter which cannot be doubted; though the conspiracy may have been in another place. And in the present case, the delivering the vouchers, and the presenting the bill of exchange to the commissioners of the victualling office in Middlesex, were the acts of both the defendants, done in the county of Middlesex. I say it was their acts, done by them both; for the persons who innocently delivered the vouchers were mere instruments in their hands for that purpose." A similar rule of law was laid down in the case of the *Commonwealth* v. *Geo. W. Harvey*, in the Boston municipal court, in October, 1828, by Judge *Thatcher*, in which several authorities are referred to. 8 Am. Jurist 69. The same principle was recognized by the supreme court of Massachusetts, in the case of the *Commonwealth* v. *Lewis Hill*, 11 Mass. Rep. 136. It was there held, that the procuring of a counterfeit bank note, to be passed by an ignorant boy as a true one, was sufficient evidence of the passing by the defendant, who employed the boy to pass it.

According to the authorities cited, which are believed to contain and to show what was the law of England upon the subject under consideration, after the passage of the act of 2 and 3 of Edward VI. chap. 24, (A. D. 1549,) we think there can be no doubt, that in England, an accessory in a felony before the fact, could, in virtue of that act, be tried for the offence, only in the county in which he committed the offence of procuring or advising the commission of the principal offence, which was committed in another county.

And it seems to us, that this view is in accordance with the general principle of the common law that crimes are local, and can only be tried in the county where they are committed. The crime of the accessory, if it can be regarded as committed anywhere, is committed at the place where the intelligent agent is procured to commit the principal act. And, so far as we are advised, the law of England remained the same from the passage of the act aforesaid to the time of the American revolution.

And it is well settled that the law of England, both common and statute, as it was at the organization of the provincial government, so far as the same consists with our institutions, is the law of New Hampshire, unless it be repugnant to the constitution, or altered or repealed by some statutory or legislative enactment. *State* v. *Rollins,* 8 N. H. Rep. 550.

And we are not aware that the law of England, adopted and in force in this State, has been so altered as to reach the case under consideration. There is no doubt that by the provisions of the Rev. Stat. chap. 225 § 2, the English law is so far altered, that if the commission of a crime be procured in one county in this State, to be committed in another, and the same be actually committed in the other by the principal offender, the accessory may be tried in either county. The provisions are that " if any person shall aid in the commission of any offence, or be accessory thereto before the fact, in one county, which offence may be committed by the principal offender in another county ; or if parts of any offence may be committed in more than one county ; in either of said cases the offence shall be deemed to have been committed, and the indictment may be found and the trial had, in either county.

But we do not regard those provisions as embracing the case under consideration. Here Moore was not accessory to the felony in any county in this State, but in the county of York in the State of Maine. The provision is not that in

such a case the offence shall be deemed to have been committed and that the trial of the accessory may be had in a county in this State. The provision is, that in the cases provided for, the trial shall be had in either of the two counties mentioned, viz: the county in which the commission of the principal offence was planned or procured by the accessory, or that in which the principal offence was actually committed. A construction that would give a right of trial in either county, in a case like the present, would involve the absurdity of a provision for the trial of the offence in another State in which the aid was given, or the commission of the offence was procured.

On the whole, we are of the opinion that the indictment cannot be maintained against Moore in the county of Strafford, upon the facts stated for the consideration of this court.

*Motion granted.*