Johns v. The State.

*A. W. Hendricks* and *R. Hill*, for the appellees.

———— ◆◇◆ ————

## JOHNS v. THE STATE.

A person, who, out of the State of *Indiana*, becomes accessory before the fact to a felony committed within the State, can not be punished therefor under the laws of this State.

Section 2 (2 R. S., 1852, p. 361,) of our criminal code, must be construed to embrace only persons who, without the State, commit a crime, which, in legal contemplation, is to be deemed as having been committed within the State, under circumstances which will make the person thus committing it a principal in the crime.

APPEAL from the *Delaware* Circuit Court.

WORDEN, J.—On the night of the 4th of February, 1862, the office of the treasurer of *Jay* county was broken open, and a large amount of money stolen therefrom. *Johns*, the

appellant, together with three others, was indicted for the *larceny.* Upon trial, the appellant was convicted and sentenced to imprisonment in the penitentiary.

At the proper time, the appellant asked the following charge, which was applicable to the evidence, and was refused, viz.: " If the defendant did nothing more than, at a time previous to the commission of the crime charged in the indictment, to counsel with and encourage *Barker* and *Blackburn,* in the State of *Ohio,* to come to *Indiana,* and commit the larceny charged in the indictment, and was not, himself, in *Indiana* at the time the offense was committed, or nearer the place than the city of *Dayton,* State of *Ohio,* he should be acquitted on this indictment."

In determining whether the conviction can be sustained, two questions arise. *First:* Whether an accessory before the fact can be convicted on the indictment *for the larceny,* to which he was thus accessory? and *Second:* Whether he can be convicted where the acts done by him, making him such accessory, were committed without the limits of the State? If either of these questions shall be determined against the State, the judgment must be reversed.

From the view which we take of the second question, it will be unnecessary to pass upon the first, but a few observations may be made upon it, having some bearing, incidently, upon the second. At common law, an accessory before the fact must have been charged *as such,* and not as principal; and he could not be convicted, except jointly with, or after the principal, whose acquittal acquitted him. 1 Bishop Crim. Law, secs. 467, 468. But our statutes have, for many purposes, abrogated all distinction between principal and accessory. Thus, the 49th section of the act concerning crime and punishment, (2 R. S., 1852, p. 422,) subjects persons aiding or abetting, etc., in the commission of crime (felonies), to the same punishment prescribed for principals; and the 51st section enacts, that they may be indicted and

convicted, before or after the principal offender is indicted and convicted.

The 66th section of the act regulating practice in criminal cases provides that, "Any person who counsels, aids or abets in the commission of any offense may be charged, tried, and convicted, in the same manner as if he were a principal." The terms of this section are clear and explicit, and, if valid, would seem to authorize the conviction of an accessory before the fact on an indictment charging him with the principal offense.

But in the Bill of Rights, (Constitution, art. 1, sec. 13,) it is declared that, "In all criminal prosecutions, the accused shall have the right   *   *   *   to demand the *nature and cause* of the accusation against him, and to have a copy thereof." Whether, where the State seeks a conviction on the ground that the accused is an accessory before the fact, an indictment which charges him as principal, sufficiently apprises him of the "nature and cause of the accusation," is a question which we leave open, it being unnecessary to determine it. Where it shall become necessary to determine it, the Court will, undoubtedly, have the benefit of a full discussion of the question, by counsel, on both sides.

We pass to the second question : Can a person who, out of the State, becomes an accessory before the fact, to a felony committed within the State, be punished by our laws?

The State relies upon the following provision of our statute, viz.: "Every person, being without this State, committing or consummating an offense by an agent, or means within the State, is liable to be punished by the laws thereof, in the same manner as if he were present, and had commenced and consummated the offense within the State." 2 R. S., 1852, p. 361, sec. 2.

Before undertaking to give this provision an interpretation, we will advert to some general principles that will aid us in doing so. It may be assumed, as a general proposition,

that the criminal laws of a State do not bind, and can not affect, those out of the territorial limits of the State.

Each State, in respect to each of the others, is an independent sovereignty, possessing ample powers, and the exclusive right, to determine, within its own borders, what shall be tolerated, and what prohibited; what shall be deemed innocent, and what criminal; its powers being limited only by the Federal Constitution, and the nature and objects of government. While each State is thus sovereign within its own limits, it can not impose its laws upon those outside of the limits of its sovereign power. Our own constitution has expressly fixed the boundaries of its sovereignty. It provides, after having defined the geographical boundaries of the State, that "The State of *Indiana* shall possess jurisdiction and sovereignty coextensive with the boundaries declared in the preceding section; and shall have concurrent jurisdiction, in civil and criminal cases, with the State of *Kentucky* on the *Ohio* river, and the State of *Illinois* on the *Wabash*, so far as said rivers form the common boundary between this State and the said States respectively." Constitution, art. 14, sec. 2.

But, while it is clear that the criminal law of a State can have no extra-territorial operation, it is equally clear that each State may protect her own citizens in the enjoyment of life, liberty, and property, by determining what acts, within her own limits, shall be deemed criminal, and by punishing the commission of those acts. And the right of punishment extends not only to persons who commit infractions of the criminal law *actually* within the State, but also to all *persons who commit* such infractions as are, in *contemplation of law*, within the State.

Decided cases will illustrate the last proposition. The case of *The People* v. *Adams*, 3 Denio, 190, was one in which this subject underwent a full discussion and examination. It was there held, that a person who, in the State of *Ohio*,

made certain false representations, by means of which he obtained, *through innocent agents*, goods in the city of *New York*, was guilty of a violation of the laws of the latter State, and could be there punished. The case goes upon the ground that, as the agents through whom the goods were obtained were innocent, the party thus making the representations, and through such agents obtaining the goods, must be regarded as the principal in the crime, and, therefore, that personal presence in *New York* was not necessary. The Court say, " Personal presence, at the place where a crime is perpetrated, is not indispensable to make one a principal offender in its commission. Thus, where a gun is fired from the land, which kills a man at sea, the offense must be tried by the admiralty, and not by the common law courts; for the crime is committed where the death occurs, and not at the place whence the cause of death proceeds. And, on the same principle, an offense committed by firing a shot from one county, which takes effect in another, must be tried in the latter, for there the crime was committed. (1 Chit. Crim. Law, 155, 191. *United States* v. *Davis*, 2 Sum. 485.) In such cases the offender is the immediate actor in the perpetration of the crime, although not personally present at the place where the law adjudges it to be committed. He is there, however, by the instrument used to effect his purpose, and which the law holds sufficient to make him responsible, at that place, for the act done there.

"But crimes may be perpetrated through the instrumentality of living agents, in the absence of the principal, and our law-books are full of such cases. Where poison is knowingly sent, to be administered as medicine by attendants who are ignorant that it is poison, and death ensues, the person who thus procures the poison to be taken is guilty of murder. So, where a child without discretion, an idiot, or a madman, is induced by a third person to do a

felonious act, the instigator alone is guilty, and although
not personally present at the perpetration of the crime, he
is a principal felon. * * * But where the agent is a guilty
actor in the commission of the felony, the law makes him
the principal offender, and the one by whom he was em-
ployed, or instigated, is, if absent, but an accessory before
the fact." The case of *The King* v. *Brisne and Scott*, (4 East,
164,) cited in *The People* v. *Adams*, is also in point. It was
an information for a conspiracy to cheat the Crown by false
vouchers. The trial was in the county of *Middlesex*, and it
appeared that all the acts in which either of the defendants
*immediately* took part were done by them either on the
high seas, at *Brassa Sound*, or at *Leswick*, in the isle of
*Shetland*. The only acts proved to be done in *Middlesex*
were those which were done by them *mediately*, through the
intervention of *innocent* persons. Upon this it was objected,
that all the acts of the defendants themselves, which consti-
tuted the offense of conspiracy, were committed out of the
jurisdiction of the common law. But it was held, that the
acts done by the innocent agents of the defendants, in *Mid-
dlesex*, were their acts done in that county. The case of
*The Commonwealth* v. *Harvey*, reported in 8 Am. Jurist, 69,
is also in point. There, *Harvey*, in the State of *New York*,
had perpetrated a forgery, by means of which he procured,
*through innocent persons*, a sum of money from a house in
*Boston*, he remaining all the time in the State of *New York*.
It was held, on the principle already adverted to, that he
was amenable to the criminal law of *Massachusetts*, the crime,
in contemplation of law, having been committed there.

There are other cases running through the books that
serve to illustrate and establish our proposition, that a State
may rightfully punish all persons who *commit* an offense
within the State, either actually, or in contemplation of law;
but it is unnecessary to extend this opinion by any further
examination of them. Two circumstances may be noticed

in reference to all the cases that have come under our observation: 1. The crime has been deemed, in law, to have been committed in the State where it was punished, although the perpetrator, at the time of its commission, may have been personally out of the State; and 2. The party punished has been held to be the person who *committed* it; that is, he has been held to be the principal, and not merely an accessory before the fact. Indeed, in no justly legal sense can it be said, that a man who, in one State, procures a responsible party to go out of that State into another, and there commit a crime, *commits* any crime *within the latter State.*

No case has come under our notice, and we presume there is none, where a party has been punished in a State where a crime has been committed, who was merely an accessory before the fact to such crime, in another State. On the contrary, the only direct adjudication that we are aware of, on the point, is the other way. The case alluded to is that of *Ex parte Joseph Smith,* (the Mormon prophet,) 3 McLean, 121. *Smith* had been charged, in Missouri, with being an accessory before the fact to an assault and battery, with intent to kill. The assault, etc., was perpetrated in *Missouri,* but *Smith's* acts, making him such accessory, were committed in the State of *Illinois.* Upon a requisition of the Governor of *Missouri* upon the Governor of *Illinois,* Smith was arrested, and took out a writ of *habeas corpus* for his discharge, and was brought before the Circuit Court of the *United States.* That Court express their views upon the point in question as follows: " It is the .duty of the State of *Illinois* to make it criminal in one of its citizens to aid, abet, counsel, or advise, any person to commit a crime in her sister State. Any .one violating the law would be amenable to·the laws of *Illinois,* executed by its own tribunals. Those of *Missouri* could have no agency in his conviction and punishment. But if he shall go into *Missouri,* he owes obedience to her laws, and is liable before her courts,

to be tried and punished for any crime he may commit there; and a plea that he was a citizen of another State would not avail him. If he escape, he may be surrendered to *Missouri* for trial. But when the offense is perpetrated in *Illinois*, the only right of *Missouri* is, to insist that *Illinois* compel her citizens to forbear to annoy her. This she has a right to expect. For the neglect of it, nations go to war, and violate territory." *Smith* was discharged from the arrest.

With the light of these considerations before us, we return to the statutory provision before quoted, to ascertain its meaning. "Every person being without this State, committing, or consummating an offense by an agent, or means within the State, is liable," etc. This language, in our opinion, embraces all persons who may, without the State, commit a crime, which, in legal contemplation, is to be deemed as having been committed within the State, under circumstances that will make the person thus committing it a principal in the crime. Such, for instance, as shooting from without the State, thereby killing a person within the same; sending an "infernal machine," through innocent agents, from without the State, whereby life is destroyed; and cases of a like character with these, and those mentioned in a former part of this opinion. Also, when a person, though out of the State, is *present*, aiding and abetting, so as to make himself a principal in the second degree, as may well be, a State line simply being between such person and the principal in the first degree, who in person perpetrates the offense. This construction seems to be in harmony with principle, and also with the authorities.

But the provision can not be construed to embrace persons who, out of the State, become mere accessories before the fact to a crime committed within the State. This conclusion is arrived at from the considerations already mentioned, and from the fact that the language does not admit of such

interpretation. Penal statutes, says *Bishop*, "are to reach no further in meaning than their words; no person is to be made subject to them by implication; and all doubts concerning their interpretation are to preponderate in favor of the accused." 1 Bishop's Crim. Law, sec. 115.

What do the words "every person committing or consummating" mean? Undoubtedly, every person who commits or consummates an offense as provided for. This embraces those only who commit or consummate the offense, and not those who, being absent, have merely counseled, etc., the commission or consummation thereof. But it is said, that he who, out of the State, counsels, aids, etc., another to commit a crime within the State, commits the crime himself, by an agent. If a party, being absent, procures an *innocent* agent to commit a crime, he himself, as we have seen, becomes the principal; which was clearly not the case here. If, on the other hand, a party, being absent, procures a *guilty* agent to commit the crime, the agent thus committing it is the principal, and the party thus procuring it is an accessory before the fact, and can in no legal sense be said to have *committed* it.

It may be said, that a man who procures another to commit a crime is as guilty, morally, as he who actually commits it. This all may be, but it does not prove that the Courts of another State than that in which the offense was committed, have a right to punish it.) We have a statute providing for the punishment of persons who have become accessories before the fact to felonies committed in other States. Stat., 1853, p. 72. It is not unfair to presume that *Ohio* has a similar one. But whether she has or not, the defendant can not be punished under our laws.

It is urged, that, inasmuch as by our law the distinction between principal and accessory is, in many respects, taken away, there should be no distinction made in the construction of the section under consideration. But it is laid down,

that a statute will not be taken, by implication, to abrogate the distinction between principal and accessory, or any other distinction already known to the law. 1 Bish. Crim. Law, sec. 86. *The State* v. *Ricker*, 29 Maine, 84.

For these reasons the judgment must be reversed.

*Per Curiam.*—The judgment is reversed, and the cause remanded. The clerk will give the proper notice for a return of the prisoner.

*D. Kilgore*, for the appellant.

*Oscar B. Hord*, Attorney-General, *Walter March, John F. Kibbey*, and *W. A. Peelle*, for the State.