## THE PEOPLE *v.* PRESTON HODGES.

PLACE OF TRIAL OF ACCESSORY.—An accessory before or after the fact in the commission of a public offense must be indicted and tried in that county where the offense of the accessory was committed, notwithstanding the principal offense was committed in another county.

WANT OF JURISDICTION APPEARING ON TRIAL.—When it becomes manifest in the course of the trial of a person indicted as an accessory, that the offense of the accessory was committed in another county than that where the indictment was found, the Court should, on its own motion, discharge the jury and commit the accused to await a warrant from the proper county.

ARREST OF JUDGMENT IN CASE OF ACCESSORY.—If the evidence shows that the offense of the accessory was not committed in the county where the indictment was found, the Court should arrest the judgment without a motion to that effect being made.

DISTINCTION BETWEEN ACCESSORY AND PRINCIPAL.— A person who incites, counsels, hires, or commands another to commit a crime, but is not within such convenient distance as to be able to come to the immediate assistance of his associates, if required, or to watch to prevent surprise, is an accessory, and not a principal in the second degree.

APPEAL from the District Court, Eleventh Judicial District, El Dorado County.

*J. G. McCallum, J. M. Williams,* and *Coffroth & Spaulding,* for Appellant.

*J. G. McCullough, Attorney-General,* and *J. C. Goods,* for Respondent.

By the Court, SHAFTER, J.

Thomas B. Pool was indicted, jointly with three others, by the Grand Jury of the County of El Dorado, for the murder of Joseph M. Staples, which murder was alleged to have been committed in said county, July 1, 1864; and it was further charged in the indictment that Hodges, the appellant, within said county, "incited, counselled, hired and commanded" the said Pool and others to commit the said murder.

The appellant, on a separate trial, was found guilty by the jury of murder in the second degree, and he was thereupon sentenced by the Court to confinement in the State Prison for the period of twenty years.

There is only one question in the case necessary to be considered.

It appeared from all the testimony introduced at the trial, that the acts wherewith Hodges stood charged, were performed by him in the County of Santa Clara, over two hundred miles distant from the scene of the murder; and on that ground, it is now insisted for the appellant that the District Court for the Eleventh Judicial District, in which the trial and conviction were had, had no jurisdiction of the offense charged against him.

We consider the objection to be well taken. Section ninety-three of the Criminal Practice Act is as follows: "In the case of an accessory before or after the fact in the commission of a public offense, the jurisdiction shall be in that county where the offense of the accessory was committed, notwithstanding the principal offense was committed in another county." By section two hundred and fifty-five, all persons connected in the commission of a felony, whether they directly commit the act constituting the offense, or aid and assist in its commission, though not present, are to be indicted, tried, and punished, as principals. To that extent "all distinction between an accessory before the fact and a principal, and between principals in the first and second degree," is expressly abolished by the section.

There is no conflict between these sections. The latter (Section 255) requires that an accessory should be indicted, tried and punished in the same manner as principals; and section ninety-three fixes the place at or in which those events are to transpire.

Though the common law distinction between principal and accessory is in the main obliterated, yet it is retained for the purposes of venue. Sections eleven and twelve of the Act entitled "Crimes and punishments," define the term "accessory." Section two hundred and fifty-five of the Criminal Practice Act relates to the frame of the indictment against an accessory, the method of trial, and the measure of punishment; and section ninety-three determines the forum having juris-

diction of the offense. It is suggested, however, on behalf of the People, that the evidence establishes that Hodges was a principal in the second degree and not an accessory. This position is not tenable, for there was no evidence tending to prove that Hodges, at the time when the murder was committed, was " at such convenient distance as to be able to come to the immediate assistance of his associates if required, or to watch to prevent surprise, or the like." (Arch. Crim. Prac. 11.) It is further insisted that the objection to the jurisdiction on the part of the appellant comes too late, no motion in arrest on that ground having been made in the Court below. When it became manifest, in the progress of the trial, that the Court had no jurisdiction of the offense, the jury should have been discharged, (Crim. Prac. Act, Sec. 382,) and the Court, on its own motion, should have committed the accused to await a warrant from the proper county for his arrest. (Ib. Sec. 383.) Again, by section four hundred and forty-three the Court was authorized, " on its own view of the jurisdictional defect, to arrest the judgment without motion." As it is apparent on the face of the record that the whole of the proceedings were *coram non judice,* the judgment cannot be permitted to stand, even though the motion in arrest was not, in terms, based upon that objection.

Judgment reversed and cause remanded.