UNITED STATES of America,
Appellee,

v.

Billy Delano WALDEN, Appellant.

UNITED STATES of America,
Appellee,

v.

Gene Claude EASTERLING, Appellant.

UNITED STATES of America,
Appellee,

v.

John Thomas ARD, Appellant.

UNITED STATES of America,
Appellee,

v.

Fruent C. KIMES, Appellant.

UNITED STATES of America,
Appellee,

v.

Albert Harry WEATHERSBY, Appellant.

UNITED STATES of America,
Appellee,

v.

Joe Pat DAMOUR, Appellant.

UNITED STATES of America,
Appellee,

v.

Robert Emerson WHITE, Appellant.

UNITED STATES of America,
Appellee,

v.

Louis Paul MATRANGA, Appellant.

UNITED STATES of America,
Appellee,

v.

William Steven COOK, Appellant.

UNITED STATES of America,
Appellee,

v.

Richard Brent HOGAN, Appellant.
Nos. 14974–14983.

United States Court of Appeals,
Fourth Circuit.

July 20, 1972.

Certiorari Denied Oct. 10, 1972.
See 93 S.Ct. 165.

Frank K. Sloan, Charles Porter, Charles E. Baker, Robert E. Kneece,

Kermit S. King, James L. Mann, II, Robert W. Dibble, Jr., Columbia, S. C., B. H. Barton, Augusta, Ga., James C. Anders, Taylor B. Rion, Jr., and Glenn, Porter & Sullivan, Columbia, S. C., on brief for appellants.

Frank J. Kiernan, Jack L. Marshall, Wistar D. Stuckey, Michael A. Pulliam, Marvin L. Smith, Asst. U. S. Attys., John K. Grisso, U. S. Atty., and Lionel S. Lofton, on brief for appellee.

Before BOREMAN and BRYAN, Senior Circuit Judges, and CRAVEN, Circuit Judge.

CRAVEN, Circuit Judge:

This is a continuation of the appeal first presented and ruled on by this court in United States v. Walden, 448 F.2d 925 (1971). Upon rehearing of *Walden, supra,* en banc, the judgment of the district court on the question of double jeopardy was upheld by an equally divided court and the case returned to the original panel for resolution of the remaining questions presented.

■■ We think the numerous allegations of error in the trial itself are without merit. However, we think venue as to those substantive counts of the indictment which allege unlawful bank entry in other states was improperly laid in the District of South Carolina, and therefore the defendants are entitled to a judgment of acquittal on those counts. All ten defendants [1] were indicted under 18 U.S.C. § 371 for conspiracy to commit larceny of a federally insured bank in violation of 18 U.S.C. § 2113(a), conspiracy to receive money stolen from a federally insured bank in violation of 18 U.S.C. § 2113(c) and conspiracy to transport stolen money in interstate commerce in violation of 18 U.S.C. § 2314. The remaining counts of the 13-count indictment charged various defendants with violations of 18 U.S.C. §§ 2113 (entering a bank to rob it) and

---

[1]. Eleven defendants were named in the indictment. The case of defendant Boland, named in all 13 counts, was transferred to Tennessee, where he pleaded guilty to all counts and did not appeal. Since improper venue is not a jurisdictional defect, none of Boland's convictions are affected by this decision. *See* p. 1020, *infra.*

2314 (transporting money knowing it to have been stolen). In each count it was alleged that the defendants charged in that count caused, in the District of South Carolina, the prohibited act to be done. However, in counts 2, 3, 5, 6, 8, 10 and 13, the banks that the defendants were accused of entering were located in states other than South Carolina.[2] All 10 defendants were tried together on all counts of the indictment in the District of South Carolina. The jury found the defendants guilty of all charges—except defendants Ard, Matranga and White were found not guilty of conspiracy.

■ ■ Article III, Section 2, paragraph 3, of the Constitution of the United States provides:

> The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State the Trial shall be at such Place or Places as the Congress may by Law have directed.

This provision is further amplified by the Sixth Amendment, which provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law. . . .[3]

There has been some debate over the precise nature of the interest which these provisions were designed to protect,[4] but it is clear that they were designed for the

benefit of the accused in criminal trials. *See* 8 Moore's Federal Practice § 18.02[2] (2d ed. Cipes). If there is doubt as to venue the Supreme Court has indicated which way the question is to be resolved.

> Questions of venue in criminal cases . . . are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed. If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it.

United States v. Johnson, 323 U.S. 273, 276, 65 S.Ct. 249, 251, 89 L.Ed. 236 (1944).

In this appeal, the propriety of venue in the District of South Carolina for trial of all defendants for the crime of conspiracy to violate the laws of the United States, 18 U.S.C. § 317, is not questioned. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912). Nor is it questioned that venue for the trial of those defendants accused of transporting stolen money across state lines is proper in the District of South Carolina, since the proof was that the interstate transportation was either to or from South Carolina. 18 U.S.C. § 2314, United States v. Gillette, 189 F.2d 449 (2d Cir. 1951). However, it is the position of the government, accepted by the district court, that notwithstanding the rather clear constitutional venue provisions and the statutory interpretation commanded by United States v. Johnson, *supra*, the

2. Count 9 alleged an unlawful bank entry in South Carolina. Counts 4, 7, 11 and 12 alleged the transportation of stolen money either to or from South Carolina. Venue in South Carolina is obviously proper as to these counts. *See* United States v. Gillette, 189 F.2d 449 (2d Cir. 1951).

3. Rule 18 of the Federal Rules of Criminal Procedure provides nothing new, but merely implements these constitutional commands. *See* 1 Wright, Federal Practice and Procedure § 301 at 583.

4. Article III, Section 2 of the Constitution seems to have been designed solely to insure that the place of the criminal trial be in the state where the crime was committed while the Sixth Amendment was designed to insure that the jurors be chosen from that district within the state in which the crime was committed. *See* Blume, The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue, 43 Mich.L.Rev. 59 (1944) and Comment, Multi-Venue and the Obscenity Statutes, 115 U.Pa.L.Rev. 339, 404–14 (1967).

venue for trial on those counts of the indictment which alleged the unlawful entry of banks located in other districts may properly be laid in the District of South Carolina. We disagree.

## I

The government's first theory is that bank entry in violation of 18 U.S.C. § 2113 is a continuing offense or an offense begun in one district and completed in another so as to bring it within the ambit of 18 U.S.C. § 3237.[5] The district court's agreement with this contention was founded on the concept that a conspiracy to perform an illegal act or an accessorial act in preparation of an illegal act is the first step toward the consummation of the substantive offense and that therefore the offense is *begun* when and where any act in furtherance of its execution is performed. We think this analysis overlooks the legal distinction between preparation for a crime and commission of the crime itself, and is contrary, to the spirit and letter of the Constitution.

As Judge Dobie has put it, "All federal crimes are statutory, and these crimes are often defined, hidden away amid pompous verbosity, in terms of a single verb. That essential verb usually contains the key to the solution of the question: In what district was the crime committed?" Dobie, Venue in Criminal Cases in the United States District Court, 12 Va.L. Rev. 287, 289 (1926). There are some offenses which by their very nature are such that they may be begun in one dis-

trict and completed in another or completed in more than one district. Offenses which make criminality depend upon crossing state lines are among them, as well as such offenses as embezzlement and conspiracy, which usually transpire over a considerable period of time. Bank robbery or unlawful entry is not such an offense.

With regard to the particular counts in question, the portion of 18 U.S.C. § 2113 charged in the indictment was the second paragraph.[6] The prohibited verb of the statutes was "enter" for the purpose of larceny. In each robbery the money was taken from the bank building itself, and all defendants in the particular count were present in the state in which the robbery took place when it took place. We think that entry into a bank to commit larceny could only take place in the state where the federally insured banks were located.

The situation here is analogous to that considered by the Supreme Court in Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961), in which the Supreme Court specifically rejected the government's argument that the crime of filing false non-Communist affidavits was begun in the district in which the defendant executed them. Noting that "Multiple venue in general requires crimes consisting of 'distinct parts' or involving 'a continuously moving act'", Travis v. United States, *supra*, 364 U.S. at 636, 81 S.Ct. at 362, the Court concluded that it was only the *filing* of

---

5. 18 U.S.C. § 3237 provides in part:
   (a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another or committed in more than one district may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

6. 18 U.S.C. § 2113 provides:
   § 2113. Bank robbery and incidental crimes
   (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in

the care, custody, control, management, or possession of, any bank, or any savings and loan association; or
   Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—
   Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

false affidavits in the District of Columbia which was prohibited, not their execution in Colorado, and Congress had specifically designated the District of Columbia as the only place where the affidavits could be filed. Venue was proper, therefore, only in the District of Columbia. Likewise, here the crime proscribed by the second paragraph of 18 U.S.C. § 2113 is not the planning or the preparation to rob the bank, but the actual entry for the purpose of committing larceny. These defendants could only have done this act in the districts where the various banks were located. *See* Reass v. United States, 99 F.2d 752, 754 (4th Cir. 1938); United States v. Bozza, 365 F.2d 206 (2d Cir. 1966); United States v. Sweig, 316 F.Supp. 1148 (S.D. N.Y.1970). To hold otherwise would require that we ignore the Constitution and its interpretation in United States v. Johnson, *supra*, and this we cannot do.

## II

██ The government's second alternative theory of venue is said to be based upon the doctrine that an accessory may be tried where his accessorial acts took place. The district court's interpretation of this doctrine was that "if the government can substantiate its allegations, it would appear that the defendant's [sic] South Carolina based conspiratorial and/or accessorial activity [7] would have made them accessories before the fact at common law, and, consequently, venue exists in this district as a result of that activity." We disagree.

██ Since the enactment of 18 U.S.C. § 2,[8] making an accessory a principal, it has been settled that an accessory may be tried in the jurisdiction where the

substantive offense was committed. United States v. Gillette, *supra*, 189 F.2d at 451. Prior to the enactment of the statute, it was, of course, true, as at common law, that an accessory could be tried in the jurisdiction of his activity although the substantive offense was committed elsewhere. Taking the two propositions together, the United States urges upon us that it had a choice of venue and could properly have tried these defendants either in the states where the banks that were unlawfully entered were located *or* in the State of South Carolina where the conspiracy to rob the banks was formulated. Assuming, without deciding, that conspiratorial acts within the context of this case may be equated with accessorial acts, *see* footnote 7, *supra*, we nevertheless disagree.

That an accessory operating in South Carolina may be tried with his principal at the place of unlawful bank entry in Tennessee does not establish the converse. There is no rule of law authorizing the principal to be tried with his accessory where the accessory's acts took place. *See* United States v. Gillette, *supra*, 189 F.2d at 452. The government insists, however, that for purposes of venue the individual defendants charged in the substantive counts are in theory being charged as accessories operating within the State of South Carolina and not as principals in the making of unlawful entry into banks in other states. If we accept the argument, we would have, with respect to these substantive counts, the conceptual difficulty of a bank robbery or unlawful entry being perpetrated entirely by accessories in South Carolina without the assistance of principals at place of entry. Unless, of course, we

---

7. The district court seemed to equate a conspirator with an accessory. While it may be that an accessory will *a fortiori* be guilty of conspiracy with the principal, it does not follow that a conspirator is necessarily an accessory to the substantive crimes which are the objects of the conspiracy. *See generally*, State ex rel. Brown v. Thompson, 149 W.Va. 649, 142 S.E.2d 711 (1965), for a discussion of the common law distinctions between principal, aidor and abettor, and accessory.

8. § 2. Principals
   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

accept the ancillary theory that one may be both a principal in a substantive offense and, at the same time, his own accessory in another jurisdiction.

■ It is, of course, possible for a person's criminal conduct to subject him to prosecution either as a principal or as an accessory. *See generally*, 22 C.J.S. Criminal Law § 90 at 269 and cases cited. But where all persons charged as accessories for purposes of obtaining venue at the place where the crime was planned (South Carolina) are physically present and actively engaged in unlawful entry of a bank in another jurisdiction, we think it would distort both the substantive criminal law and the law of criminal venue to allow prosecution for the substantive offense of unlawful entry at the place (South Carolina) where the crime was planned. By definition accessories cannot alone commit a crime. At least one principal is essential, and when all who allegedly participate are in fact principals there is a degree of absurdity in proceeding against them all as accessories for purposes of choice of jurisdiction. It makes sense to bring an accessory to the place of trial of his principal; it is nonsense to reverse the procedure and serves no purpose of which we are aware except to further facilitate the prosecution of conspiracy cases and to combine such a prosecution with the prosecution of substantive offenses.

We think that inherent in the evolution of the concept of accessory is the idea that the accessory and the principal are ordinarily different persons. Morgan v. United States, 159 F.2d 85 (10th Cir. 1947). If the accessory and principal are the same person, there would never have been an occasion to develop the rule that an accessory may be tried at the place of his accessorial acts. The reason for such a rule was the supposition that he could not be tried at the place of the substantive offense because he was not physically present at that place. We agree with the district court in United States v. Sweig, *supra*, 316 F.Supp. at 1161 that "it is only the defendant who is charged solely as an accessory who may be tried where his accessorial acts took place, because that is where his non-continuing crime was committed."

■ A decision by the United States to prosecute for conspiracy is not without some advantage to the government. *See* Hyde v. United States, 225 U.S. 347, 384–391, 32 S.Ct. 793, 56 L.Ed. 1114 (1912), (Holmes, J., dissenting), and Krulewitch v. United States, 336 U.S. 440, 446–458, 69 S.Ct. 716, 719–725, 93 L.Ed. 790 (1949), (Jackson, J., dissenting). To add to the advantages already existing by engrafting a forum shopping option as to substantive offenses would, we think, go too far. To repeat, venue is not mere formalism. The right to a trial before a jury of the vicinage is fundamental and such a trial ought to be held at the place of commission of the substantive offense. The Sixth Amendment may not be ignored, and we think that a dubious theory of accessoryship of the very principals who commit the substantive offense or an illogical theory of continuing crime should not be allowed to undercut it.

### III

■ We find no merit in the other allegations of error presented. The district court did not abuse its discretion in denying severance as to those counts where venue was properly laid in the District of South Carolina, nor was it error to admit the physical evidence seized at the Cottage Grove Bank and Trust Company. In addition, the search of the Walden residence, conducted prior to Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), was proper under the rules laid down in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), and Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), as a search incident to a lawful arrest.

■ We think improper venue did not deprive the District Court for the District of South Carolina of jurisdiction to try any of these defendants. The general jurisdictional statute, 18 U.S.C. § 3231, provides that: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of

the States, of all offenses against the laws of the United States." We agree with Professor Orfield that "whenever a defendant violates a federal criminal statute all federal district courts then have jurisdiction." Orfield, Venue of Federal Criminal Cases, 17 U.Pittsburgh L.Rev. 375, 381 (1956). In each count of the indictment in which venue was improperly laid, the government has simply failed to prove an essential part of its case. United States v. Jones, 174 F.2d 746 (7th Cir. 1949); United States v. Gross, 276 F.2d 816 (2d Cir. 1960). Since the government failed to prove a necessary part of its case, those defendants convicted on counts 2, 3, 5, 6, 8, 10 and 13 are entitled to reversal of convictions on those counts. The convictions of all defendants on all other counts are affirmed. The judgment of the district court is

Affirmed in part: reversed in part.